342 So.2d 616 (1977)
STATE of Louisiana
v.
Isaiah HALL.
No. 58444.
Supreme Court of Louisiana.
January 24, 1977.
Rehearing Denied March 2, 1977.
*618 Laurence D. Rudman, Rudman & Howard, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Division, Gretna, for plaintiff-appellee.
SANDERS, Chief Justice.
The State charged Isaiah Hall with possession of heroin with the intent to distribute in violation of LSA-R.S. 40:966(A). After a jury trial, defendant was found guilty as charged. The court sentenced him to life imprisonment.
He appeals his conviction and sentence, relying upon fourteen assignments of error.[1]

ASSIGNMENTS OF ERROR NOS. 22, 24, AND 25
In these assignments, defendant asserts that his right to privacy was violated when the police officers entered into a private dwelling without a warrant. Amendment IV of the United States Constitution; Article I, Section 5 of the Louisiana Constitution of 1974.
Defendant contends that without a warrant or probable cause for arrest, police officers entered his motel room, held him at gun point, searched his room, and found two plastic bags containing heroin and other narcotics paraphernalia.
At the hearing on the motion to suppress, the following evidence was adduced:
Agent Richard Dennis of the Jefferson Parish Police Department Narcotics Division, acting upon information supplied by a confidential informant, whose reliability in the past led to narcotics arrests in Jefferson Parish, sent the confidential informant to Room 229 of the Sentry Motel in Gretna, Louisiana, to purchase three packets of heroin. Following standard police procedure, Agent Dennis searched the confidential informant but found no money or narcotics on his person. He then gave the informant thirty-six dollars with which to purchase the three packets of heroin. Agent Dennis proceeded to a place where he could observe the actions of the informant and there witnessed the informant knock on the door of Room 229 of the Sentry Motel and gain entrance. The agent then witnessed the informant exit that room and proceed to a pre-arranged meeting place where the informant produced three tin-foil packets. The agent conducted a field test and found the packets contained heroin. He searched the confidential informant and found no other narcotics or money. The informant told Agent Dennis that Isaiah Hall and James Lewis, also known as "Cadillac Slim" and "Slim," were in possession of a large quantity of heroin and that the heroin might be moved.
A search warrant was secured for Lewis's residence, 1815 Joanne Place in New Orleans. Both New Orleans and Jefferson Parish Police Officers executed the warrant. Mrs. Lewis and her children were present. Certain non-contraband articles were seized along with $1,190 in cash and an envelope bearing the words: "Call Slim at 366-4551, Room 229." The officers traced this telephone number to the Sentry Motel in Gretna where the informant made the buy from Isaiah Hall with Lewis present. Fearing that the occupants of Room 229 would receive word of the search of Lewis's residence or that the occupants had already received word, the officers returned to the Sentry Motel at approximately 5 a.m. and *619 obtained a pass key from the manager. They knocked on the door of Room 229 and announced that they were police officers. Receiving no response, but hearing movements inside, they opened the door with the key and entered with guns drawn. The officers testified that they feared the contraband would be destroyed. The officers found defendant, a woman, and a small child in the bed. They ordered the occupants out of bed. Defendant was arrested and read his "Miranda rights." The officers explained the purpose of the entry to defendant and told him that they would obtain a search warrant before fully searching the room. A cursory "Chimel" search was conducted for weapons within the reach of the occupants. Within a few minutes Agent Dennis left the room "secured" and obtained a search warrant. Within approximately sixty minutes of the entry into the motel room, Agent Dennis returned with the search warrant. A full search was then conducted. There officers found two plastic bags containing a brown substance which they field tested and found to contain 9% heroin. The officers found the heroin above the tiles of the suspended ceiling, along with a small tin foil package of white powder. When tested, the white powder was found to contain three grams of procaine, a substance used to dilute heroin for sale on the street. The officers also seized two cans of shaving powder and a set of five measuring spoons which when tested disclosed procaine residue.
In substance, defendant argues that the entry cannot be justified; that there was no necessity for "securing" the motel room. He contends that the police officers could have kept the room under surveillance and monitored the motel switchboard until the warrant was procured.
Defendant concedes that he was arrested when the police officers entered the room and restrained him. Nonetheless, he argues that because he was not removed from the scene until an hour later, when the search warrant was executed and the contraband seized, the officers did not intend to hold him on the basis of their warrantless entry.
Louisiana Code of Criminal Procedure Article 213 authorizes an officer to arrest a person without a warrant when there is reasonable cause to believe that that individual has committed an offense, although not in the presence of the officer. Reasonable or probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge suffice to justify a man of average caution to believe that an offense has been committed.
In determining whether reasonable cause for arrest exists, the rigorous proof required for conviction is unnecessary. Reasonable cause is something less and must be judged by the probabilities and practical considerations of everyday life on which average men, and more particularly, average police officers can be expected to act. State v. St. Amand, La., 274 So.2d 179 (1973); State v. Williams, 260 La. 1167, 258 So.2d 539 (1972); State v. Dell, 258 La. 1024, 249 So.2d 118 (1971).
Admittedly, defendant was arrested when the officers entered his motel and restrained his movement. The police officers actually placed defendant under arrest based upon their conclusion that defendant possessed heroin with the intent to distribute.
We find that the police officers had reasonable cause to arrest defendant. Since the arrest was legal, the search for weapons within the reach of the occupants following the arrest was also proper. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
We also find that exigent circumstances existed which justified the warrantless entry until a search warrant could be obtained. Once Lewis's residence in New Orleans was searched, the large amount of heroin at the motel was in danger of being destroyed. Officers could not have known whether the news of the search of Lewis's residence in New Orleans had reached the motel room in Gretna. The officers, therefore, acted reasonably in preventing the destruction of the evidence. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Warden *620 v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).
Assignments of Error Nos. 22, 24, and 25 are without merit.

ASSIGNMENTS OF ERROR NOS. 22, 24, AND 25
In these assignments, defendant again complains that the trial court erred in denying his motion to suppress. He argues specifically that the application for the search warrant was fatally defective in that it contained misrepresentations and uncorroborated hearsay evidence. Defendant contends that the confidential informant did not exist, and the purchase of three packets of heroin did not occur.
The application for the search warrant recites:
"THAT A SEARCH WARRANT SHOULD BE ISSUED FOR THE SEARCH OF the premises bearing municipal #'s 50 W. Bank Exp. Gretna, La. Said premises being the Sentry Motel. Said premises being a 2 story multi-dwelling motel const (constructed) of white concrete with green trim. Said premises being room 229.
"FOR THE FOLLOWING REASONS:
"On 4 Sept 75 Agent R. Dennis reports meeting with a Reliable Confidential Informant who has in the past given this Officer information which has led to the arrests of numerous narcotic violators on the West Bank of Jefferson Parish. Upon Agent meeting with the Reliable Confidential Informant who has in the past been referred to as C.I. he informed Agent Dennis that he knew of a n/m (negro-male) who had just come into Jefferson Parish with a large quantity of Heroin from California. The C.I. further informed Agent that the N/M's name would be one Ike Hall and he would be staying at the Sentry Motel in room 229 Gretna, La. The C.I. further stated to Agent Dennis that Hall would be dealing the Heroin along with another N/M by the name of James Lewis . . . (alias) Cadillac Slim. The C.I. went on to say that he knew of another N/M by the name of William Hayes . . . (alias) Sweet Pea who was going to purchase a large quantity of Heroin on this date from Lewis and Hall further furnishing Agent Dennis with Hayes's address in N.O., La. The C.I. additionally stated to Agent Dennis that he would be in a position to purchase a quantity of Heroin from Hall if Agent wished. This was agreed upon by Agt arranging to meet with the C.I. at a latter date and time.
"Upon receipt of the above mentioned information Agent Dennis immediately initiated an investigation into the above information with the following results: Agent Dennis learned that Ike Hall is in fact staying at the Sentry Motel in room 229 Gretna, La. A check of the NOPD Computer revealed that William Hayes has prior narcotics arrests for Heroin. A check of the NOPD Computer revealed that James Lewis . . . Cadillac Slim also has an arrest record for Heroin. Hall has no previous arrest record. A check with other Agents of this division revealed that they have received information in the past in regards to Hayes and Lewis being involved in the Illicit Distribution of large quantity's (quantities) of Heroin in Jefferson and Orleans Parish. It should be noted at this time that Agent Dennis notified Agents Habb and Dabdue of the NOPD Narcotics Division concerning the above mentioned matter. Dets (Detectives) Habb and Dabdue informed Agent Dennis that they had received information this very date from an informant who told them the same information concerning Hayes, and Lewis. It should be further noted at this time that Det's of the NOPD Narcotics Division executed a search warrant on the residence of Hayes and seized appx. (approximately) 13 bundles of Heroin.
"On a later date and time Agent Dennis reports meeting with the Reliable Confidential Informant at a pre-arranged location. Upon Agent meeting with the C.I. Agent Dennis searched the person of the C.I. for any signs of contraband or money with negative results. Agent *621 Dennis then handed the C.I. $36.00 instructing him to proceed to room 229 of the Sentry Motel and to purchase 3 papers of Heroin. Agent and the C.I. then departed the area of the pre-arranged location to proceed directly to the area of the Sentry Motel room 229. Agent keeps the C.I. in view at all times. Agent observed the C.I. to approach and to knock on the front door of room 229. After a few seconds Agent observed the front door to open and the C.I., to enter. After appx. 5 minutes Agent Dennis observed the front door to room 229 to open and the C.I. to depart the area to proceed directly to the location of the pre-arranged meeting place. Upon Agt meeting with the C.I. he handed Agent Dennis 3 small aluminum foil packets informing same that he had just purchased the 3 papers of heroin from Ike Hall and James Lewis . . . Cadilac Slim. The C.I. further stated to Agent that Lewis and Hall were getting ready to move all of the dope to a new location to keep them cool until they finished dealing all the Heroin. The C.I. further stated to Agent Dennis that while he was in the room be observed 2 clear plastic bags containing a large amount of brown powder that Hayes instructed him to be Heroin. Agent Dennis at this time conducted a preliminary field test on a portion of the evidence which proved positive for the presence of heroin. Agent Dennis then searched the person of the C.I. for any signs of contraband or money with negative results.
"It should be noted at this time that Agents of the Jefferson Parish Narcotics Division and Dets of NOPD Narcotics acting on probable cause furnished by Agent Dennis and the C.I. feeling that the evidence was about to be destroyed or lost used such probable cause to secure room 229 of the Sentry Motel awaiting Search Warrant.
"Based on the aforementioned information and facts it is respectfully requested that a Search Warrant be issued for the permises bearing municipal #'s 50 W. Bank Exp. Gretna, La. room 229 and that said search warrant be extended to include daytime, nightime, Sundays as well as Holiday Searches."
Under our jurisprudence, a search warrant may not be issued upon an affidavit reciting nothing more than the affiant has reasonable cause to suspect that the object of the search is on the premises. State v. Wells, 253 La. 925, 221 So.2d 50 (1969). The affidavit must recite facts establishing to the judge's satisfaction that probable cause exists for the issuance of the search warrant. State v. Holmes, 254 La. 501, 225 So.2d 1 (1969); State v. Wells, supra.
In State v. Paciera, La., 290 So.2d 681 (1974), we deduced the following rule:
"The affidavit submitted to the magistrate may be based entirely upon hearsay, but, if so, it must set forth underlying circumstances and details sufficient to provide a substantial factual basis by which the magistrate might find reliable both the informant and the information given by him. Factors which support the credibility of an unidentified informant include prior accurate reports or any specific independent corroboration of the accuracy of the instant report. Factors which support the creditability of the information reported include (a) direct personal observation by the informant, or (b), if the information came indirectly to the informant, the reasons in sufficient factual detail for the magistrate to evaluate and credit the reliability both of the indirect source and of the indirectlyobtained information."
The present affidavit shows that the informant had furnished accurate reports in the past. It also describes in detail the informant's visit to the motel room, witnessed by the affiant, and the informant's personal observation of two bags of heroin in the room. It details the affiant's personal knowledge of the confidential informant's purchase of heroin. Finally, the affidavit reflects, that the affiant investigated and found that other members of the police also received the same information.

*622 Besides defendant's objection to the search warrant's application containing hearsay, he also maintains that because it incorrectly recites that James Lewis had an arrest record for heroin, the search warrant was improper. While the application for the search warrant is factually incorrect in that regard, this mistake is insufficient to nullify the search warrant. The officer testified that this information resulted from a computer check and that he believed it to be true at the time he prepared the application.
As the search warrant was valid, the evidence seized pursuant to its execution is admissible. The trial court, therefore, correctly denied defendant's motion to suppress.
Assignments of Error Nos. 22, 24, and 25 are without merit.

ASSIGNMENTS OF ERROR NOS. 1, 19, 20, 22, 24, 25, AND 26
In these assignments, defendant contends that because no warrant was issued for 1815 Joanne Place, any evidence obtained pursuant to this search, or any information obtained as a result of that search was tainted as the "fruit of the poisonous tree" and must be suppressed. He relies upon Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).
Defendant argues that because the State did not produce the search warrant for 1815 Joanne Place, none existed. He notes that Mrs. Lewis, the occupant present when the police searched the premises, testified that the police presented no warrant.
The record reflects that although the search warrant could not be located for trial, it did exist. Officer Dabdoub testified that he had a warrant on the night the search was conducted and that he presented the warrant to Mrs. Lewis. Commissioner Nils Douglas testified that he remembered issuing a search warrant for Joanne Place. He specifically recalled that he was awakened two separate times that evening to sign warrants. Officer Kirkpatrick testified that he saw the search warrant. Officer McNeil testified that there was a search warrant and that he saw it.
Although the State could not offer the search warrant into evidence, after hearing the testimony of numerous police officers, the trial court was satisfied that there was a search warrant and it was misplaced.
LSA-R.S. 15:436, the best evidence rule, provides:
"The best evidence which from the nature of the case must be supposed to exist, and which is within a party's control, must be produced."
LSA-R.S. 15:437 provides:
"Matters which can be proved only by written evidence can not be established by parol; but the contents of a document may be proved by parol, if its loss or destruction be shown, or if it is in the possession of the adverse party and he fails to produce it after reasonable notice."
The trial court, therefore correctly ruled that, despite the loss or destruction of the search warrant, parol testimony could be used to prove its existence. Therefore, as the police did obtain the information, that defendant could be reached by telephone at 366-4551, Room 229, pursuant to a valid search warrant, that evidence was properly obtained and could not taint the later arrest and search.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 35
In this assignment of error, defendant complains that the trial judge erred in denying the following requested jury charges:[2]

*623 Special Charge No. 3
"A presumption is defined as the consequence which the law draws from a known fact to an unknown fact.
Special Charge No. 4
"The facts from which an inference or presumption are drawn must not only be established in evidence, but the inference or presumption to which the proven facts give rise must be strong and almost inevitable.
Special Charge No. 5
"The facts relied upon to establish an inferred conclusion must be proved by direct evidence or known to exist. You may not pyramid one inference upon another inference.
Special Charge No. 6
"If, in order to reach the conclusion that the state has proven the guilt of the defendant beyond a reasonable doubt, you must conclude by inference that he constructively possessed a controlled dangerous substance, and/or that he did so knowingly and intentionally, and you must use that inference as a basis to infer that he possessed the same with the intent to distribute it, I instruct you that you must find the defendant `not guilty' of the crime of possession of a controlled dangerous substance with the intent to distribute."
In denying these special requested jury charges, the trial judge correctly stated in his Per Curiam:
"Requested special charges Numbers Three through Six dealt with an alleged judicial rule that one inference may not be drawn from another inference. Defendant requested that the jury be instructed that under this rule the defendant must be found not guilty if the jury must conclude by inference that the defendant constructively possessed a C.D.S., (controlled dangerous substance) and further infer from that conclusion that he possessed the C.D.S. with the intent to distribute.
"In the opinion of this Court the whole thrust of defendant's argument is incorrect. It is true that there are two separate elements to the offense of possession with intent to distribute a C.D.S., one element being possession, the other being the intent to distribute. It is also true that both of these elements may be proven by inference from circumstantial evidence. However, the two elements are separate and distinct. One element of the crime cannot, without more, be said to supply some evidence of the other required element of the offense. The mere possession of a C.D.S. can never be used to infer an intent to distribute. This inference must be drawn from other circumstances surrounding the transaction, such as possession of a quantity so large that it would be unreasonable to contend that possession was with any other purpose than to distribute. State v. House [La.], 325 So.2d 222.
"Defendant's Requested Charges Three through Six were therefore denied on the basis that they erroneously stated the law applicable to the case."
We agree with the trial judge that the special charges incorrectly state the law. Therefore, he properly rejected the charges. A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. LSA-C.Cr.P. Art. 807.
Assignment of Error No. 35 is without merit.

ASSIGNMENTS OF ERROR NOS. 10, 11, 13, 17, 27, AND 28
In these assignments defendant's basic contention is that the trial court erred in overruling all of his attempts to identify the confidential informant.
Herein defendant raises Assignments of Error No. 10, 11, 13, 17, 27, and 28 which allege that the trial court erred in refusing to allow defendant to question Agent Dennis as to the time he went to the Sentry *624 Motel with the confidential informant; in overruling defendant's objection to testimony concerning the purchase of three papers of heroin by the informant; and by denying defendant information regarding the informant's identity in Bill of Particulars Nos. 13, 14, and 6.
The informer privilege is a privilege of withholding the identity of an informant who supplies information to law enforcement officials concerning crime. The privilege is founded upon strong public policy, designed to encourage the reporting of crime. Disclosure of an informant's identity is warranted only under exceptional circumstances. The burden of showing exceptional circumstances is upon defendant. State v. Rhodes, La., 308 So.2d 770 (1975); State v. Howard, La., 283 So.2d 199 (1973); State v. Dotson, 260 La. 471, 256 So.2d 594 (1971).
We have held that a confidential informant's supplying information used by police officers in an affidavit for the issuance of a warrant is not of itself an exceptional circumstance warranting disclosure of the informant's identity. State v. Dabon, La., 337 So.2d 502 (1976); State v. Santos, La., 309 So.2d 129 (1975); State v. Howard, supra.
Defendant's bare allegation that the confidential informant did not exist is insufficient to warrant the disclosure. The defendant has not satisfied his burden of showing exceptional circumstances.
Assignments of Error Nos. 10, 11, 13, 17, 27, and 28 are without merit.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs not agreeing with the treatment of the last group of assignments.
DENNIS, J., concurs.
NOTES
[1] Although defendant filed thirty-six formal assignments of error, he notes only fourteen assignments in his brief and oral argument. The remaining twenty-two assignments, which were neither briefed nor argued, are considered abandoned. State v. Phillips, La., 337 So.2d 1157 (1976); State v. Blanton, La., 325 So.2d 586 (1976); State v. Carlisle, La., 315 So.2d 675 (1975).

This opinion will conform generally to the five basic groupings of assignments of error in defendant's brief and oral argument.
[2] In defendant's formal assignments of error in the record, he complains of the trial court's refusal to give special jury charges Nos. 1-6. However, in brief, he complains only of the denial of this third through sixth requested jury charges. Therefore, special charges Nos. 1 and 3 are not considered.