NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1428

COMMONWEALTH

vs.

JORGE GERMAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a bench trial in the Boston Municipal Court, the defendant was convicted of carrying a firearm without a license and knowingly possessing a firearm with a defaced serial number. On appeal, the defendant argues that his pretrial motion to suppress was wrongly denied and that at trial, the only evidence that he was a minor at the time of the offense and thus ineligible for firearms licensure was improperly admitted.  We affirm.

1.  Motion to suppress.  a.  Facts.  At the evidentiary hearing on the defendant's motion, the Commonwealth introduced the testimony of Boston police officers Luis Capriles, Christopher Hegerich, and Ryan Fullam, as well as video

recordings taken from body cameras worn by two of those officers.[1]  We briefly summarize the motion judge's findings of fact, supplemented by additional facts apparent from our review of the video recordings, see Commonwealth v. Yusuf, 488 Mass. 379, 380-381 (2021), and by other uncontroverted facts we infer that the judge credited.  See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).

At approximately 10:47 P.M. on June 11, 2022, Capriles, Hegerich, and Fullam -- all members of the Boston police department's "Youth Violence Strike Force" -- were patrolling together in an unmarked police vehicle when they saw a Jeep speeding on Columbia Road.  When they stopped the Jeep, the officers saw three occupants, none of whom were wearing seatbelts.  Capriles approached the defendant, who was sitting in the front passenger seat, while Fullam went up to the driver's side and spoke with the driver and the rear seat passenger.  The officers noticed that despite the hot weather at the time, the defendant was wearing an unzipped winter coat.

---

[1] All three officers were wearing body cameras during their interactions with the Jeep's occupants.  However, Capriles's camera was not activated until the time of the exit order, and Hegerich's camera did not record any part of the interaction.

The police demanded that the occupants of the Jeep produce identification.[2]  The defendant provided his identification to Capriles, apparently showing Capriles a photograph of a document on his cell phone.  Capriles photographed the image on the defendant's cell phone, then gave the documentation of the defendant's identification to Hegerich.[3]  Hegerich took the identification information for the Jeep's occupants back to the police car, where he looked it up in a database, the criminal justice information system (CJIS).  Capriles, who had training in identifying armed gunmen, noticed a bulge in the defendant's "waistband/crotch" area that did not appear to be part of the defendant's body and saw the defendant make "a pushing motion downward towards his waistband area."[4]  Based on these observations, Capriles believed that the defendant was

---

[2] Throughout the interaction, Capriles and the defendant conversed in Spanish.

[3] Capriles testified that after obtaining the defendant's identification, he "went to [Hegerich], who was at the cruiser, relayed the information to him," then returned to the Jeep.  The video footage was consistent with this account.

[4] The judge, "mindful that the camera footage only shows the defendant's waist and groin area for a matter of seconds during an encounter that spanned several minutes," noted that the body camera footage was "not conclusive on the issue of whether there was a bulge in the defendant's waistband or groin."  In any event, based on the officers' testimony, the judge found that "[a]ll three officers saw [the pushing] movement, although they each described it somewhat differently."

3

concealing something in his clothing, and according to Capriles's testimony, Capriles subsequently signaled nonverbally to Hegerich that "there might be a firearm."[5]

The motion judge found that "Capriles remained with the defendant while Hegerich checked the occupants' identifications." At least once during the interaction, Capriles walked to the cruiser.[6] Fullam remained at the driver's side window "throughout the stop" and continued to speak in a "cordial" manner with the Jeep's driver. "Fullam's interaction with the defendant was minimal due to [the defendant's] inability to speak English," but Fullam continuously shifted his attention and the beam of his flashlight around to all three occupants of the Jeep. The motion judge found that during the stop, the defendant seemed no more nervous than an average person stopped by the police would be.

---

[5] Although Hegerich may have been "at the cruiser" when Capriles made the gesture, there is no evidence that he was unable to see Capriles's gesture.

[6] To the extent that the judge found that Capriles remained continuously at the passenger's side window beside where the defendant was sitting, his finding is clearly erroneous. It is apparent from the video recording that Capriles left the passenger's side window after taking a photograph of the defendant's cell phone screen. When Capriles reappears on the video recording, he is approaching the Jeep from behind, coming from the area in which the cruiser is stopped.

4

At some point before Hegerich gave him the information about the occupants' identification check, Capriles noticed that the defendant was wearing a global positioning system monitor (GPS monitor) on an ankle bracelet. When asked about the GPS monitor, the defendant told Capriles that it was due to an open case involving a stolen moped. However, after he ran the CJIS query, Hegerich told Capriles that the defendant had a pending gun case. At that point, Capriles ordered the defendant to get out of the car. When the defendant refused to do so despite Capriles's repeated commands, the police forcibly removed the defendant from the Jeep. Hegerich frisked the defendant's groin area and felt a firearm, which the police recovered from inside the defendant's clothing.

In a written memorandum of decision, the motion judge ruled that the exit order and patfrisk of the defendant were proper because at the time the police gave the order and performed the frisk, they reasonably suspected that the defendant was armed and dangerous.

b. Discussion. We begin by recognizing that generally, "in reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of [the judge's] ultimate findings and conclusions of law." Commonwealth v. Tremblay, 480 Mass. 645, 652 (2018), quoting Commonwealth v. Clarke, 461 Mass. 336,

5

340 (2012).  See Commonwealth v. Karen K., 491 Mass. 165, 169 (2023) (defining clear error).  We defer to the motion judge's determination of the weight and credibility of the evidence because making such assessments "is the function and responsibility of the judge who saw and heard the witnesses, and not of this court."  Commonwealth v. Neves, 474 Mass. 355, 360 (2016), quoting Commonwealth v. Moon, 380 Mass. 751, 756 (1980).

> "Where a judge's findings are based on recorded evidence, we are in as good a position as the motion judge to evaluate that evidence.  However, where, as here, the judge considered the recorded evidence in light of oral testimony at the motion to suppress hearing and made credibility determinations therefrom, we adhere to the normal standard of review."

Commonwealth v. Hoose, 467 Mass. 395, 399-400 (2014).

On appeal, the defendant does not argue that the facts the judge found failed to support the judge's conclusion.  Instead, he contends that certain witness testimony was inconsistent and "confusing," that some of it conflicted with the video recordings of the stop, and that as a result, the evidence of when and if the police reasonably suspected that the defendant was concealing a firearm was "so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it."  United States v. Henderson, 463 F.3d 27, 32 (1st Cir. 2006), quoting Anderson v. Bessemer City, N.C., 470 U.S. 564, 575 (1985).  On that basis, the defendant argues that the motion judge "committed clear error in believing" the key

6

evidence about Capriles's observations of a suspicious bulge in the defendant's clothing and the defendant's efforts to conceal it.  Mindful of our deferential standard of review, we decline to disturb the motion judge's order denying the defendant's motion.

We acknowledge the defendant's well-articulated argument that where the police obtain evidence through potentially illegal means, they may be incentivized to create a false story to avoid suppression of the evidence under the exclusionary rule.  See, e.g., Commonwealth v. Fredericq, 482 Mass. 70, 78 (2019) (exclusionary rule prohibits "the use of evidence derived from an unconstitutional search or seizure").  However, we decline to apply a different level of scrutiny where the Supreme Judicial Court has not done so.  See Commonwealth v. Sweeting-Bailey, 488 Mass. 741, 754-755 (2021), cert. denied, 143 S. Ct. 135 (2022).  Whether Capriles's testimony was "plausible" was for the motion judge to decide.  See Neves, 474 Mass. at 360; Hoose, 467 Mass. at 399-400.

At the motion hearing, the defendant's counsel argued that the police officers' accounts were not believable; from the judge's denial of the defendant's motion, we infer that the judge considered and rejected the defendant's perspective.  We are not persuaded that the judge committed clear error in doing so.

7

The defendant's interpretation of Capriles's actions -- "le[aving] his partner alone and outnumbered with a person he believed was armed and dangerous, without so much as telling him he believed there was a gun in the car" -- could lead to the conclusion that Capriles did not believe the defendant was dangerous, but the totality of the evidence at the hearing does not require that conclusion.  The officers' testimony and the video evidence suggest that Capriles gestured to Hegerich to alert him to Capriles's concern that the defendant was armed, that the other officers were visibly in the general area,[7] that Fullam was attentive to all three occupants of the Jeep, and that Fullam was on the driver's side of the Jeep with the driver and back seat passenger between himself and the defendant. Moreover, the police were not literally "outnumbered" on the scene at any relevant time -- in addition to the three officers present from the inception of the stop, it is apparent that there were other officers immediately available to help on demand.[8]  Even assuming that Capriles's actions -- namely leaving

_____

[7] The video depicts a vehicle with flashing blue and white lights directly behind the stopped Jeep, no more than one or two car lengths away, and shows Hegerich walking around the Jeep and between the other vehicle and the Jeep when Capriles is out of view.

[8] Fullam's body camera recording shows him using a radio to call for additional assistance and then within one minute, reporting that additional officers were arriving.

the side of the Jeep after becoming suspicious that the defendant was armed -- require a finding that Capriles failed to act in accordance with his training or that his actions were ill-advised, we are not persuaded that the motion judge could not reasonably have credited his testimony about having seen the bulge and the defendant's apparent attempts to conceal it.

Nor are we convinced that because the officers' descriptions of the bulge in the defendant's clothing and the defendant's efforts to manipulate it differed in some ways, the motion judge erred in finding that Capriles saw a bulge he suspected was a concealed object. The judge found that "[a]ll three officers saw" the defendant's "pushing motion" to conceal the object, "although they each described it somewhat differently." It was for the judge to determine what the facts were based on his assessment of the weight and credibility of each witness's testimony. See Moon, 380 Mass. at 756. See also Commonwealth v. Yesilciman, 406 Mass. 736, 743 (1990); Commonwealth v. Spagnolo, 17 Mass. App. Ct. 516, 517-518 (1984) ("The clear error standard is a very limited form of review," such that "[w]here there has been conflicting testimony as to a particular event or series of events, a judge's resolution of such conflicting testimony invariably will be accepted"). Even if, as the defendant contends, the video footage taken in a vacuum could be interpreted to support a different result than

the one the judge reached, the judge had oral witness testimony to provide additional context for his interpretation of the recording.  We are bound to give deference to the judge's interpretation.  See Hoose, 467 Mass. at 399-400.  Thus, we discern no clear error in the motion judge's decision to credit Capriles's testimony,[9] and we decline to disturb the order denying the defendant's motion to suppress evidence of the firearm.

2.  Evidence of defendant's age.  Absence of licensure is an essential element of unlawful possession of a firearm.  See G. L. c. 269, § 10 (a), as amended through St. 2014, c. 284, § 91;[10] Commonwealth v. Guardado, 491 Mass. 666, 690, 692, S.C., 493 Mass. 1 (2023), cert. denied, 144 S. Ct. 2683 (2024).[11] Thus, at the defendant's trial, the Commonwealth was required to prove beyond a reasonable doubt that the defendant lacked a valid firearm license.  See Guardado, supra at 690.  The Commonwealth moved in limine to admit evidence of the defendant's birthdate to prove that he was not old enough to

_____

[9] Because we find no clear error, we need not consider whether exclusion of that evidence would require us to vacate the motion judge's order.

[10] We cite to the versions of the relevant firearms statutes in effect at the time of the defendant's arrest in 2022.

[11] This case was tried in March 2024, after the release of the decision in Guardado.

10

qualify for a license to carry firearms. See G. L. c. 140, § 131 (d), as amended through St. 2018, c. 123, §§ 11, 12. The trial judge allowed that motion, and at the defendant's bench trial, the Commonwealth relied exclusively on Capriles's testimony to prove the defendant's date of birth.[12] Over the defendant's objection, Capriles testified that after the police stopped the Jeep for speeding and noticed that none of the occupants were wearing seatbelts, the officers asked all three occupants for identification and the defendant "provide[d] [them] with a name and date of birth." Using that information, Capriles determined that the defendant was under twenty-one years of age. Capriles and Hegerich testified that they used CJIS to confirm the defendant's identity using the name and date of birth the defendant provided to Capriles. Insofar as the defendant objected to evidence of his date of birth for the reasons he now argues, see Commonwealth v. Grady, 474 Mass. 715,

_____

[12] To the extent that the defendant suggests that "a certified copy of a government record" was required to establish the defendant's date of birth, he provides no case to support his contention, and we are aware of no such precedent. Cf. Commonwealth v. Roe, 90 Mass. App. Ct. 801, 808-809 (2016) (police officer's testimony that victim was born in particular month and year was sufficient to establish victim's age at grand jury presentment on indictment for indecent assault and battery on person under fourteen years old). We pause to note, however, that had the Commonwealth obtained and offered certified records of the defendant's date of birth, much of the defendant's appellate challenge to his conviction might have been avoided.

719 (2016), we review the judge's ruling on the admissibility of the challenged evidence for an abuse of discretion and, if the judge erred, to determine whether the error was prejudicial. See, e.g., Commonwealth v. McDonagh, 480 Mass. 131, 140 (2018).

a. Hearsay challenge. We discern no abuse of discretion in the judge's determination that Capriles's testimony about the birthdate included on the identification the defendant provided to the police was not hearsay. It is undisputed that when the police asked for proof of his name and date of birth, the defendant showed Capriles an image of an identifying document on his cell phone. The judge could reasonably have concluded from that nonverbal conduct that the defendant intended to assert that the information he showed to the police included his correct name and birthdate. See Commonwealth v. Koney, 421 Mass. 295, 302-303 (1995) (identification card handed to police admissible to prove defendant held himself out as person named thereon).[13] See also Mass. G. Evid. § 801(a) (2025) (including

_____

[13] The defendant's argument that the identification document was only a statement of "who the issuer of the identification said [he] was," rather than a statement of who the defendant claimed to be, is not persuasive. Even if the statement was only admissible to prove that the defendant held himself out as the person on the document, see Koney, 421 Mass. at 303, it nonetheless is probative of the defendant's lack of a firearms license. Cf. Commonwealth v. Encarnacion, 105 Mass. App. Ct. 46, 55 (2024) (evidence of defendant's admission of lack of license "directly established that the defendant lacked" license).

"nonverbal conduct" in definition of "statement").  As the defendant's statement, the birthdate on the identification document was not hearsay when offered as evidence against him through the testimony of the police officers to whom the defendant made the statement.  See Commonwealth v. Allison, 434 Mass. 670, 676 & n.5 (2001) (defendant's admissions to killing victim were statements of party opponent, not hearsay, and admissible through witness to whom they were made); Mass. G. Evid. § 801(d)(2)(A) (2025).

b.  Best evidence challenge.  "The best evidence rule provides that, where the contents of a document are to be proved, the party must either produce the original or show a sufficient excuse for its nonproduction."  Commonwealth v. Ocasio, 434 Mass. 1, 6 (2001).  Where the evidence at trial permitted the trial judge to find that the defendant presented his identification by showing the police an image on his cell phone, after which the police returned the defendant's cell phone to him, we are satisfied that the Commonwealth had "sufficient excuse" for failing to produce the original identification document.  See id.; Koney, 421 Mass. at 302-303. For that reason, assuming without deciding that the best evidence rule applies to the identification the defendant presented to the police on June 11, 2022, see Commonwealth v. Proia, 98 Mass. App. Ct. 125, 131 (2020) (noting that whether

13

best evidence rule applies to driver's license "appears to be an open question"), we discern no abuse of discretion in the trial judge's decision to admit testimony about the birthdate shown on the defendant's identification rather than require the Commonwealth to introduce the original document (or the defendant's cell phone).  See Ocasio, supra, quoting 2 McCormick on Evidence § 237 (5th ed. 1999) (best evidence rule is "principally aimed, not at securing a writing at all hazards and in every instance, but at securing the best obtainable evidence of its contents").

c.  CJIS challenge.  The defendant argues that the testimony at trial about the CJIS inquiry Hegerich conducted using the name and birthdate Capriles took from the defendant's identification was inadmissible hearsay.

Putting to the side for a moment the fact that the great majority of the evidence in question was elicited by defense counsel, and assuming that the evidence was inadmissible, we are not persuaded that the defendant was prejudiced.  This is because the evidence that the CJIS search "confirmed" the defendant's birthdate was only cumulative of other evidence that we have determined was properly admitted, and the case against the defendant was otherwise strong.  See, e.g., Commonwealth v. Wilson, 427 Mass. 336, 348 (1998) (no prejudice "in light of the other evidence of [defendant's] guilt" where improperly admitted

14

hearsay was "merely cumulative of properly admitted evidence");

Commonwealth v. Encarnacion, 105 Mass. App. Ct. 46, 55 (2024).

Moreover, defense counsel's questions about the CJIS inquiry were part of a strategy to highlight the fallibility of the CJIS database, and his questioning was effective on that score. Both Capriles and another prosecution witness, Brian Ball, agreed that the accuracy of the CJIS search results depended on the accuracy of the information included in its databases; indeed, in Ball's words, human error -- "garbage in" --- could result in inaccurate results -- "garbage out." See Commonwealth v. Jones, 439 Mass. 249, 262 (2003) (no prejudice resulted from improperly admitted evidence where evidence in question supported defendant's theory of case).

d. Voluntariness challenge. For the first time on appeal, the defendant contends that if the birthdate he provided to the police was a "statement," it was inadmissible because it was not voluntary. Because the defendant neither raised the issue in his motion to suppress nor presented it as a live issue at trial,[14] the record on it has not been developed. See Commonwealth v. Tremblay, 460 Mass. 199, 206 (2011) ("At a suppression hearing, a defendant's statement initially is

_____

[14] Nor did the motion judge raise it in her ruling on the Commonwealth's motion in limine. See Commonwealth v. Page, 105 Mass. App. Ct. 532, 537 (2025).

15

presumed to be voluntary, placing the burden on the defendant to produce evidence tending to show otherwise"); Commonwealth v. Kirwan, 448 Mass. 304, 318 (2007) ("substantial evidence of involuntariness" is required for voluntariness to be live issue). As a result, the record is "not adequate to permit review on the merits," and we consider the issue waived. Commonwealth v. Santos, 95 Mass. App. Ct. 791, 795 (2019). See Commonwealth v. Piard, 105 Mass. App. Ct. 428, 438-439 (2025).

Judgments affirmed.

By the Court (Henry, Hand & Allen, JJ.[15]),

Clerk

Entered: April 6, 2026.

---

[15] The panelists are listed in order of seniority.

16