CHARLES M. FAUCI *vs.* FRANK MULREADY, receiver, & another.

Suffolk. February 5, 1958. — May 9, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Receiver. Evidence,* Preliminary question, Best and secondary, Of existence of document. *Practice, Civil,* Preliminary question.

Statement as to adoption or rejection of executory contracts by an equity receiver. [536–538]

An equity receiver of a shipyard authorized by the court to "carry on the . . . business in the . . . ordinary course as heretofore conducted" was not required to secure from the court specific authority to reject as burdensome a partly executory contract for the construction of a ship made by the proprietor of the shipyard before the receivership. [538]

It could not be found that an equity receiver of a shipyard adopted a partly executory contract for the construction of a ship made by the proprietor of the shipyard before the receivership where it appeared that the receiver, shortly after his appointment, instructed a representative of the proprietor to "continue with the construction of" ships under contract but, within some two or three weeks after his appointment, informed the other party to the contract in question that "he, as receiver, elected not to adopt that contract." [538–539]

In an action on an alleged bond, where it was in issue whether such bond had ever existed and at a preliminary hearing by the judge on the admissibility of secondary evidence of the bond there was evidence warranting but not requiring a finding that it had once existed, the judge was in error when he in effect found that it never had existed and solely for that reason excluded the secondary evidence and or-

dered a verdict for the defendant; he should have assumed the fact that the bond once had existed and should have confined his determination to the facts prerequisite to the admission of secondary evidence of a once existent document.   [541–542]

A party seeking to introduce secondary evidence of a once existent document is not required to do more at the preliminary hearing than establish the facts prerequisite to the admission of the secondary evidence. [543]

CONTRACT OR TORT.   Writ in the Superior Court dated December 17, 1948.

The action was tried before *Morton, J.*

In this court the case was argued before *Wilkins,* C.J., *Spalding, Williams, Counihan,* & *Cutter,* JJ., and afterwards was submitted on briefs to all the Justices.

*Vincent R. Brogna,* for the plaintiff.

*John M. Lanning,* for the defendant Peerless Casualty Company (*Frank Mulready,* pro se, with him).

CUTTER, J.   This is an action of contract or tort.   The first three counts are against the receiver of Somerset Shipyards, Inc. (hereinafter called Shipyards).   Count 4 was waived.   The fifth count is against Peerless Casualty Company (hereinafter called Peerless).   The receiver was appointed as permanent receiver on June 16, 1944, by the Superior Court.   The trial judge directed verdicts for the receiver on counts 1, 2, and 3 and for Peerless on count 5, and reported for review the exceptions then saved.   The facts in their aspect most favorable to the plaintiff are stated below.

Shipyards made a written contract, dated August 4, 1943, to build a trawler for the plaintiff for $83,000.   Under this contract, Shipyards was bound to furnish a completion and performance bond.   Shipyards had also made an earlier contract with the plaintiff, dated July 22, 1943, for the construction of a separate trawler for $83,000.   A bond, referring to the July 22 contract, was furnished by Shipyards as principal and Peerless as surety.   The July 22 contract and the related bond are not here directly in issue.

Although the August 4 contract called for $1,000 on signing of the contract and $20,000 on commencement of con-

struction, Shipyards started work before the $21,000 was paid. By December 31, 1943, work had progressed materially on the trawler and Shipyards requested the plaintiff to come forward with the "balance [$12,000] of the first payment . . . [then] somewhat past due." The latest payment was made on March 8, 1944, and brought the total payments under the August 4 contract to $16,000. Shipyards proceeded with work after March 8, 1944, "notwithstanding . . . there was Five Thousand . . . Dollars due."

On June 8, 1944, Peerless filed in the Superior Court a bill in equity seeking the appointment of a receiver for Shipyards. The bill recited that Shipyards had "entered into contracts [listed in the bill, and including the July 22 contract] with eight different persons for the construction of boats," on each of which Peerless had executed as surety a bond in which Shipyards was principal, and that Shipyards was unable to meet its debts as they became due and might be forced to abandon work on the boats. Peerless in the bill offered "to undertake the obligations of completing" the listed contracts, upon the bonds for which it was surety. The list did not include the August 4, 1943, contract with the plaintiff, as to which it denied in the present case having furnished a completion bond. The defendant Mr. Mulready, who had been for some years attorney for Peerless, was appointed (see *Wax* v. *Monks*, 327 Mass. 1, 3–4) permanent receiver on June 16 "(a) To take possession of . . . the property . . . and to hold, manage, and dispose of the same pursuant to the order of the court. (b) To carry on the . . . business in the . . . ordinary course as heretofore conducted until the further order of the court."

1. The jury heard evidence only on counts 1, 2, and 3. The plaintiff sought to recover from the receivership estate, (a) under count 1, for breach of the August 4 contract, on the theory that after his appointment the receiver adopted, and then wrongfully committed a breach of, this contract; and (b) under count 2, for breach of contract upon the theory that, under the decree appointing the receiver, the receiver was bound to proceed with the August 4 contract

and that "he refused, without having obtained a further order of the court, to complete the contract with the plaintiff and wrongfully denied that any bond had been executed or delivered," and wrongfully sold the boat to another. In count 3, the plaintiff sought to recover from the receiver personally for breach of contract and of his duty as receiver, alleging that the receiver wrongfully (a) denied that any bonds had been executed covering the August 4 contract, (b) refused to complete the contract, and (c) in breach of his fiduciary duty as receiver and acting for the benefit of Peerless, delivered the completed trawler to another customer of Shipyards who had a contract secured by a bond upon which Peerless had become surety.

Shortly after his appointment, the receiver went to the shipyard and talked with one O'Neill, president and treasurer of Shipyards. He was shown the contracts and "the actual ships" and learned that two were being built for the plaintiff. The receiver told O'Neill to "continue with the construction of the[se] ships." O'Neill last supervised work about July 5, 1944. By the time he left the yard, "the keel on the second . . . boat had been laid . . . and . . . under the contract there was to be another Ten Thousand . . . Dollars paid . . . on the laying of the keel." This had not, and has not, been paid. Substantial further work had been done also on the shell platings and decks, which when completed would make due a further payment from the plaintiff.

The receiver "in the latter part of June, or early July, 1944," told the plaintiff, as the latter conceded, "that . . . [the plaintiff] had put up only Sixteen Thousand . . . Dollars under the second contract [here in issue] . . . that he, as receiver, elected not to adopt that contract; that there was no bond and that he had no money with which to build a boat and that he was going to build only one boat." The plaintiff, with reference to this conversation, testified (a) that the receiver told him that there was no bond on the second boat and that the plaintiff would get a bond if he paid in $5,000 more to bring aggregate payments to $21,000, and (b) that he told the receiver, "You give me

the bond and you will get more money, but not until you give me the bond."

The receiver in his second report to the Superior Court stated, "The contract with respect to the eighth boat [apparently the second boat for the plaintiff] was never consummated by the buyer. The buyer was supposed to put up Twenty-one Thousand . . . Dollars before he would receive a completed contract and a . . . bond. He had put up only Sixteen Thousand . . . Dollars." The claim of the plaintiff for $16,000 was listed. The receiver "never applied to the court that appointed him . . . for permission to terminate the contract . . . dated August 4, 1943." Opinions as to the fair market value in 1945 of a boat built to the specifications of the August 4 contract ranged between $100,000 and $175,000.

In 1945 the plaintiff obtained leave of the receivership court to sue Peerless "for failure to deliver a performance bond . . . or for damages," and to sue Shipyards and the receiver for specific performance or damages. The present action was commenced by writ dated December 17, 1948.

The pleadings and the record do not present for our consideration any questions about the existence or extent of a claim provable in the receivership proceedings for breach or rejection of Shipyards' obligations under the August 4 contract (as distinguished from breach of an obligation adopted by or binding upon the receiver). See Clark, Foley, and Shaw, Adoption and Rejection of Contracts and Leases by Receivers, 46 Harv. L. Rev. 1111, 1112–1117. To recover under counts 1 and 2, on account of an obligation binding upon the receiver as such, the plaintiff must show that the receiver either (1) adopted the August 4 contract and then failed to perform it, or (2) improperly rejected it. To recover under count 3 from the receiver individually, the plaintiff must show that the receiver, by a breach of his fiduciary duty, improperly rejected the August 4 contract.

An equity receiver upon appointment is not bound to perform or adopt executory contracts and leases, unless directed to do so by the court which appointed him. In

the absence of such orders, a receiver should reject any
executory contract or lease, the performance of which will
be burdensome and deplete the receivership estate. He has
such time as the court may fix, and, in the absence of court
action, a reasonable time, within which to make up his
mind what action is appropriate. Until a receiver elects
to adopt affirmatively an executory or partly executory
contract or lease, or until "the doing of some act, which
would in law be equivalent to an election," the receiver
does not become bound by such a contract or lease. *Commonwealth* v. *Franklin Ins. Co.* 115 Mass. 278, 281–282.
*Butterworth* v. *Degnon Contracting Co.* 214 Fed. 772 (2d Cir.).
See *Ellis* v. *Boston, Hartford & Erie Railroad,* 107 Mass. 1,
14–15, 17, 31, 33; *Bell* v. *American Protection League,* 163
Mass. 558, 561–563; *Menke* v. *Willcox,* 275 Fed. 57, 58–59
(S. D. N. Y.); *Samuels* v. *E. F. Drew & Co. Inc.* 292 Fed.
734 (2d Cir.); *Pacific Western Oil Co.* v. *McDuffie,* 69 F. 2d
208, 212–213 (9th Cir.), cert. den. 293 U. S. 568; *Consolidated Gas Electric Light & Power Co.* v. *United Railways & Electric Co.* 85 F. 2d 799, 801–802 (4th Cir.), cert. den. sub
nom. *United Railways & Electric Co.* v. *Consolidated Gas, Electric Light & Power Co.* 300 U. S. 663; *Re Rochester Shipbuilding Corp.* 32 F. Supp. 98, 100 (W. D. N. Y.);
Clark, Foley, and Shaw, Adoption and Rejection of Contracts and Leases by Receivers, 46 Harv. L. Rev. 1111,
1112, 1122–1136; Clark, Receivers (2d ed.) § 428; Tardy's
Smith, Receivers (1920 ed.) §§ 359a–363. See also *Abbott* v.
*Stearns,* 139 Mass. 168, 169–171; *Greenall* v. *Hersum,*
220 Mass. 278. Compare *Cunningham* v. *Commissioner of
Banks,* 249 Mass. 401, 423; *Commissioner of Banks* v.
*McKnight,* 281 Mass. 467, 475; *Baldwin* v. *Commissioner of
Banks,* 283 Mass. 423, 429.[1]

---

[1] Cases under § 70b of the current bankruptcy act, U. S. C. (1952 ed.)
Title 11, § 110 (b), and the corporate reorganization provisions of c. 10 of
that act, U. S. C. (1952 ed.) Title 11, § 516 (1), are much affected by specific
statutory language and are less relevant here than the earlier Federal equity
receivership cases. See, however, Collier, Bankruptcy (14th ed.) vol. 4,
§ 70.43; vol. 6 §§ 3.23, 3.24; Remington, Bankruptcy (5th ed.) § 1141 et seq.
and (1947 ed.) § 4394. Compare, however, *In re Public Ledger, Inc.* 161 F. 2d
762, 767 (3d Cir.).

A receiver is entitled to the instructions of the court which appointed him. See *Bigelow* v. *Lawyers Mortgage Investment Corp.* 320 Mass. 254, 255, 268–269. Where his judgment is likely to be questioned by creditors, prudence will dictate recourse to the court for a decree authorizing particular action which will afford protection against later claim that the action was disadvantageous to the estate or beyond his authority. However, it is not to be expected that a receiver authorized to operate a business will apply to the court for specific approval of his decision on every business problem which comes before him.

The present receiver was authorized to "carry on the . . . business in the . . . ordinary course as heretofore conducted until the further order of the court." See *Shannon* v. *Shepard Manuf. Co. Inc.* 230 Mass. 224, 226, writ of error dism. sub nom. *Mason* v. *Shannon,* 252 U. S. 572; *New England Theatres, Inc.* v. *Olympia Theatres, Inc.* 287 Mass. 485, 489–491, cert. den. sub nom. *E. M. Loew's, Inc.* v. *New England Theatres, Inc.* 294 U. S. 713. He was thereby given power in effect to do what was necessary or appropriate to conduct the ordinary affairs of the company. See Pomeroy, Equitable Remedies (3d ed.) §§ 201–204; Clark, Receivers (2d ed.) §§ 357, 361, 392 (e); High, Receivers (4th ed.) §§ 188, 273a, 273b; Tardy's Smith, Receivers (1920 ed.) §§ 42, 61. He was not specifically directed to apply to the court for authority to reject or adopt executory contracts, either by the decree appointing him or by rule of court. See Rule 91 of the Superior Court (1954). We find nothing in our cases requiring such a receiver to go to the court for specific authority to reject burdensome contracts in the normal course of running the business, although, with respect to a contract of this size, with the attendant uncertainties which the record reveals, it would have been better practice for him to have sought court approval.

It could not be found that the receiver had adopted the August 4 contract by his instructions to O'Neill to continue work on the trawler. These were no more than orders to keep on with the work experimentally until he ascertained

whether the contract was likely to be advantageous. There is also no basis for contending that the receiver adopted the contract by taking an unreasonable time to decide his course of action in view of his prompt unequivocal rejection of the August 4 contract as a receivership obligation[1] in any respect. Even if a contention that the receiver acted improperly because the contract was a valuable receivership asset could be made otherwise than in the receivership proceeding itself, all the evidence is that the contract would have been unprofitable to the estate.

A finding for the plaintiff would not have been warranted upon any of the first three counts.

2. Count 5 seeks to recover from Peerless upon a completion bond which the plaintiff alleges (a) was executed and delivered by Peerless; (b) was, in 1943 or early 1944, given by the plaintiff to O'Neill, then president of Shipyards, to hold and subsequently given by O'Neill to one Curtin; and (c) has been out of the control of the plaintiff and lost, destroyed, or purposely secreted from the plaintiff. Attached to count 5 is what purports to be a copy of the bond "except that it lacks the insertion of names, dates, seals, amounts, and signatures." Peerless denied furnishing any such bond.

At a preliminary hearing, without jury, to determine whether secondary evidence of the bond might be introduced, there was evidence, which would have warranted, but not required, findings (a) that there had once existed a bond signed by Peerless relating to the August 4 contract; (b) that it had been delivered to the plaintiff, then returned to O'Neill and by him delivered to Curtin; and (c) that diligent search had been made for the original. The judge, when the jury were empanelled, stated that "the fifth count declares on an instrument alleged to have been in existence at one time and now lost, on which I had a preliminary hearing . . . and I am not satisfied there was any such original instrument. Therefore a copy . . . cannot be introduced in evidence and I direct a verdict on the fifth count for the defendant."

---

[1] It is not necessary to decide whether, in view of the plaintiff's delays in making payments due to Shipyards, Shipyards itself was, at the inception of the receivership, under any obligation to proceed with the contract.

It is for "the judge . . . to decide all questions on the admissibility of evidence . . . [and] any preliminary questions of fact, . . . the solution of which may be necessary to . . . determine the . . . question of admissibility." *Gorton* v. *Hadsell*, 9 Cush. 508, 511. This principle has been consistently applied in Massachusetts where competency of evidence under a technical exclusionary rule depends upon the judge's determination that a particular situation of fact exists. That determination is conclusive if there is evidence to support it. *Slotofski* v. *Boston Elevated Railway*, 215 Mass. 318, 320–321. *Boston Safe Deposit & Trust Co.* v. *Bacon*, 229 Mass. 585, 587–589. *Commonwealth* v. *Glassman*, 253 Mass. 65, 67–69, 73–75. *Kelley* v. *Jordan Marsh Co.* 278 Mass. 101, 106–107. *Commonwealth* v. *Polian*, 288 Mass. 494, 497–498. *McGaffigan* v. *Kennedy*, 302 Mass. 12, 13–14. *Commonwealth* v. *Hoff*, 315 Mass. 551, 553. *Runels* v. *Lowell Sun Co.* 318 Mass. 466, 471–472. *Commonwealth* v. *Lee*, 324 Mass. 714, 719–721. *Winthrop Products Corp.* v. *Elroth Co. Inc.* 331 Mass. 83, 85–86. *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authority*, 335 Mass. 189, 198. See, where relevancy of offered evidence was dependent upon a preliminary question of fact, *Dexter* v. *Thayer*, 189 Mass. 114, 115; *Hart Packing Co.* v. *Guild*, 251 Mass. 43, 46; *Barrett* v. *Wood Realty Inc.* 334 Mass. 370, 374. Compare *Coghlan* v. *White*, 236 Mass. 165, 168–170; *Bartlett* v. *Medford*, 252 Mass. 311, 312–313.

The "best evidence" rule, here involved, "at common law is a preferential, rather than an exclusionary rule." See comment on Rule 602 of the Model Code of Evidence (Am. Law Inst.) at page 301. Under this rule, in order to permit proof by secondary evidence of the contents of the allegedly lost bond, the trial judge must make preliminary findings that the original had become unavailable, otherwise than through the serious fault of the proponent of the testimony, and that reasonable search had been made for it. See *Foster* v. *Mackay*, 7 Met. 531, 535–537; *Dennis* v. *Brewster*, 7 Gray, 351, 353–354; *Brigham* v. *Coburn*, 10 Gray, 329, 331–332; *Smith* v. *Brown*, 151 Mass. 338, 339–340; *Drew* v. *Drew*,

250 Mass. 41, 44–45; *Palmer* v. *Duncanson,* 254 Mass. 494, 495. See also *Tillotson* v. *Warner,* 3 Gray, 574, 577; *Comstock* v. *Soule,* 303 Mass. 153, 157–158. Here, however, the secondary evidence was excluded, not because the original was found to be available or because insufficient search had been made, but because the judge was not persuaded that such a bond had ever existed. He plainly took the understandable view that if he found the document had never existed, he could not logically decide that it had been lost and dealt with the problem as a preliminary question of fact relating to the competency of evidence under an exclusionary rule, like that applied in *Slotofski* v. *Boston Elevated Railway,* 215 Mass. 318, 320–321. See *Durbrow* v. *Hackensack Meadows Co.* 48 Vroom, 89, 91–92 (which may be affected by *Feingold* v. *Norwich Union Indemnity Co.* 117 N. J. L. 541, 543–544); *Boyle* v. *Wiseman,* 11 Exch. 360, 362–365, 366–368. See also *Matz* v. *United States,* 158 F. 2d 190, 192 (Ct. App. D. C.); *United States* v. *Dennis,* 183 F. 2d 201, 230–231 (2d Cir.), affd. sub nom. *Dennis* v. *United States,* 341 U. S. 494. Compare Wigmore, Evidence (3d ed.) § 1189 at page 332 and § 1242 at page 464; McCormick, Evidence (1954 ed.) §§ 53, 197.

No Massachusetts case, to which our attention has been directed, decides whether the best evidence rule includes within the preliminary question for the judge the very existence of the original document about which secondary evidence is offered. It has been said that the best evidence rule was intended "only to assure the trier of the fact of having the most direct and reliable evidence possible of the contents of a writing as to the existence of which an open issue of fact was raised." Maguire, Evidence: Common Sense and Common Law, pages 229–230. See McCormick, Evidence, § 53; Morgan, Some Problems of Proof, 88–105.[1]

---

[1] See also Maguire and Epstein, Preliminary Questions of Fact in Determining the Admissibility of Evidence, 40 Harv. L. Rev. 332, 408, 419–420; Morgan, Functions of Judge and Jury in the Determination of Preliminary Questions of Fact, 43 Harv. L. Rev. 165, 170 et seq.; Morgan and Maguire, Looking Backward and Forward at Evidence, 50 Harv. L. Rev. 909, 913–919; Note, 20 Univ. of Chicago L. Rev. 313–319.

This view of the rule would leave to the trier of the ultimate facts the issue of the existence of the original document. See *Stowe* v. *Querner*, L. R. 5 Ex. 155, 157–159; *Liberty Life Assurance Society* v. *Woodward*, 219 Ala. 24, 27; *St. Croix Co.* v. *Seacoast Canning Co.* 114 Maine, 521, 524–525; *Huntoon* v. *Brendemuehl*, 124 Minn. 54, 56. See also *Dunbar* v. *United States*, 156 U. S. 185, 195–196; *Nu Car Carriers, Inc.* v. *Traynor*, 125 F. 2d 47 (Ct. App. D. C.); *Latham* v. *Fowler*, 199 Ga. 648, 652–654.

In the absence of binding authority in Massachusetts, a majority of the court feel that we should follow Rule 602 adopted in 1942 by the American Law Institute, in the Model Code of Evidence, as a statement of the best evidence rule. Under this rule, once "evidence has been introduced sufficient to support a finding that the writing [other than an official record] once existed and is not a writing produced at the trial," secondary evidence may be introduced if the judge finds, after "assuming that the writing once existed," that the writing "is now unavailable for some reason other than the culpable negligence or wrongdoing of the proponent of the evidence, or . . . [that] it would be unfair or inexpedient to require the proponent to produce the writing." See also Uniform Rules of Evidence (1953), Rule 70. In the present case, since there was evidence upon which it could be found that the original document once existed, the trial judge should have assumed that fact and then determined whether the document was unavailable for grounds stated in the rule and whether reasonable search had once been made for it. Because he excluded secondary evidence of the alleged bond on the express ground that no original ever existed, the exception to his direction of a verdict for the defendant on the fifth count must be sustained.

3. Peerless contends in effect that, (a) even if the somewhat vague and unsatisfactory testimony about the existence of the bond offered at the preliminary hearing should be believed, and (b) even if, on this evidence, it could have been found that Peerless as surety had executed the bond,

this evidence did not show that the bond had been executed in behalf of Shipyards by O'Neill who "was in charge of bonds" for Shipyards and who denied signing the bond. It is asserted that the absence of any signature in behalf of Shipyards, the principal, constituted notice to the obligee that the surety intended to condition its obligation on the principal's signature. See *Russell* v. *Annable,* 109 Mass. 72, 74; *Goodyear Dental Vulcanite Co.* v. *Bacon,* 151 Mass. 460, 461; *Bowditch* v. *Harmon,* 183 Mass. 290, 291. See also *Bean* v. *Parker,* 17 Mass. 591, 603–605; *Wood* v. *Washburn,* 2 Pick. 24. Compare Restatement: Security, § 101 (2), Illustration 2, and note to Tentative Draft No. 3 (1939) at pages 107, 224–226; Williston, Contracts (1936 ed.) §§ 1214, 1244–1246.

It is not necessary to determine at this stage whether these decisions are applicable here, where Shipyards, the principal, was bound (prior to the receivership) in any event to perform its second contract, as to which the alleged bond, if it came into existence, was to be security. Secondary evidence of the contents of the alleged bond was entirely excluded by the trial judge. At the preliminary hearing the plaintiff testified that he talked "with . . . O'Neill concerning the bond covering the second boat; that . . . O'Neill had the bond and showed it to" the plaintiff who "looked at it." If secondary evidence of the bond's contents had not been entirely excluded on the ground that no original ever existed, it is entirely possible that additional evidence about the signatures would have been offered at the trial before the jury. It was not the obligation of the plaintiff to introduce evidence of the details of contents at the preliminary hearing where his function was merely to satisfy the court on the limited preliminary question of fact under the best evidence rule as already stated.

4. The exceptions to the direction of verdicts for the defendants on counts 1, 2, and 3 are overruled. The exception to the direction of a verdict for Peerless on count 5 is sustained.

*So ordered.*