Foy v. S.M.A. Ins. Agency          CV-95-97-SD    09/30/96

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


James M. Foy

     v.                                        Civil No. 95-97-SD

S.M.A. Insurance Agency, Inc.;
Jonathan Robinson, Receiver;
Jonathan Robinson, individually


O R D E R

     In this civil action, plaintiff James M. Foy seeks
declaratory and monetary relief against defendants S.M.A.
Insurance Agency, Inc., and Jonathan Robinson individually and in
his capacity as receiver for S.M.A.  The second amended complaint
contains a claim for declaratory relief pursuant to 28 U.S.C. §
2201 (1994), as well as various state law claims including
negligence and breach of fiduciary obligations.

     Presently before the court are myriad motions filed by the
various parties.  This order will address (1) defendant
Robinson's motion to dismiss for lack of personal jurisdiction
(document 4), to which plaintiff objects; (2) defendant S.M.A.'s
and defendant receiver's motion to dismiss for lack of venue
(document 8), to which plaintiff objects; (3) S.M.A.'s and
receiver's motion for change of venue (document 7); and (4)

plaintiff's motion to disqualify counsel for defendant S.M.A. (document 25), to which defendant objects.

Background

Plaintiff Foy is a resident of New Hampshire, defendant S.M.A. is a Maine corporation, and defendant Robinson is a resident of Maine. In 1990, one Craig Linscott (not a party in this action) sought dissolution of S.M.A. in the Superior Court of York County, Maine (Brennan, J.), pursuant to Maine Revised Statutes, tit. 13-A, § 1115. In July of 1992, the court appointed Robinson as receiver of S.M.A. and set forth his duties to include, inter alia, management of S.M.A.'s business affairs.

S.M.A. has elected subchapter S status under the Internal Revenue Code, making it a pass-through entity for federal income taxation purposes. Foy claims that while Robinson was receiver, S.M.A. issued reports for federal income tax purposes which erroneously represented that Foy, as 100 percent shareholder of S.M.A., received an aggregate income exceeding $730,000 for the tax years 1992 through 1994. Despite having described these funds as income to Foy, S.M.A. refuses, "without excuse or explanation, to release these funds to Foy, despite his demand for their release." Second Amended Complaint ¶ 14. Foy also asserts that some of the withheld funds are located in New

Hampshire. Specifically, Foy alleges that S.M.A. maintained bank accounts in Somersworth, New Hampshire, and that approximately $500,000 of the money reported to be Foy's was held there. However, when Robinson learned of the instant action, he transferred the bulk of the funds out of New Hampshire. See id. ¶ 16.

On June 14, 1995, the York County Superior Court (Perkins, J.) ordered that S.M.A. be dissolved and that Robinson, in his capacity as receiver, transfer all of S.M.A.'s assets and liabilities, except for taxes, to a corporation owned by Linscott. See id. ¶ 17. Nonetheless, S.M.A. and Robinson have still failed to amend the tax reports to state that the income was Linscott's, and not Foy's. See id. ¶ 18.

Foy asks the court to declare, pursuant to 28 U.S.C. § 2201, either that the funds are in fact his or that the information returns are in error. Other counts in the complaint allege that Robinson, both individually and in his capacity as receiver, was negligent and that he breached his fiduciary duty in his capacity as receiver.

Discussion

1.  Defendant Robinson's Motion to Dismiss for Lack of Personal Jurisdiction Over Him Personally

When personal jurisdiction is challenged, the plaintiff bears the burden of persuading the court that the defendants' contacts with the forum state satisfy both the state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Dalmau Rodriguez v. Hughes Aircraft Co., 781 F.2d 9, 10 (1st Cir. 1986); Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)) (other citations omitted).

To determine whether plaintiff has met such burden, the court may select the prima facie method, which is the preferred approach to cases that do not involve conflicting versions of the facts, or material issues of credibility. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145-46 (1st Cir. 1995); Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675-76 (1st Cir. 1992). To make a prima facie showing, the plaintiff must go beyond the pleadings and "adduce evidence of specific facts." Foster-Miller, supra, 46 F.3d at 145; accord Boit, supra, 967 F.2d at 675. The district court, in turn, should accept plaintiff's properly supported evidence as true, much as it would

4

treat a satisfactorily supported motion for summary judgment as provided by Rule 56(c), Fed. R. Civ. P. <u>Id.</u>; <u>Boit</u>, <u>supra</u>, 967 F.3d at 675. Thus the court draws "the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff." <u>Ticketmaster</u>, <u>supra</u>, 26 F.3d at 203.

Rule 12, Fed. R. Civ. P., provides that the defense of lack of personal jurisdiction "shall be heard and determined before trial on application of any party, unless the court orders that the hearing and determination thereof be deferred until the trial." Rule 12(d), Fed. R. Civ. P. If a motion to dismiss is granted after the court applies the prima facie standard, then the motion is "'heard and determined before trial'" in compliance with the rule. <u>See</u> <u>Boit</u>, <u>supra</u>, 967 F.2d at 676 (quoting Rule 12(d)). However, if the court denies the motion to dismiss, "it is implicitly, if not explicitly, ordering 'that hearing and determination [of the motion to dismiss] be deferred until the trial.'" <u>Id.</u> (quoting Rule 12(d)) (alteration in <u>Boit</u>).

### a. The New Hampshire Long-Arm Statute

In diversity cases, the forum's long-arm statute governs whether the district court has personal jurisdiction over a

nonresident defendant.  <u>Sawtelle</u>, <u>supra</u>, 70 F.3d at 1387.  The relevant New Hampshire long-arm statute permits the exercise of jurisdiction over nonresident defendants who "in person or through an agent. . . commit[] a tortious act within [the] state . . . ."  New Hampshire Revised Statutes Annotated (RSA) 510:4, I (1983 & Supp. 1994).

The New Hampshire long-arm statute applicable to individuals affords jurisdiction "'to the full extent that the statutory language and due process will allow.'"  <u>Sawtelle</u>, <u>supra</u>, 70 F.3d at 1388 (quoting <u>Phelps v. Kingston</u>, 130 N.H. 166, 171, 536 A.2d 740, 742 (1987)).  "[W]hen a state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the issue of whether the exercise of personal jurisdiction comports with federal constitutional standards."  <u>Id.</u> (citation omitted); <u>accord</u> <u>Estabrook v. Wetmore</u>, 129 N.H. 520, 523, 529 A.2d 956, 958 (1987) ("This court has consistently interpreted [the long-arm statute] to grant jurisdiction whenever the due process clause of the United States Constitution permits it.") (citing <u>Roy v. North Am. Newspaper Alliance, Inc.</u>, 106 N.H. 92, 95, 205 A.2d 844, 846 (1964)); <u>see also</u> <u>Kopf v. Chloride Power Elecs., Inc.</u>, 882 F. Supp. 1183, 1192 (D.N.H. 1995).  Accordingly, although the parties dispute whether the defendants' contacts with New Hampshire satisfy the long-arm

6

statute, the court need not address the issue, and instead may proceed directly to the federal constitutional question.

### b. Federal Due Process

To comport with the federal Due Process Clause, plaintiff must show the existence of "minimum contacts" between the defendants and the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). To establish minimum contacts on a theory of specific jurisdiction, plaintiff must make the following demonstrations: (1) that defendants purposefully availed themselves of the privilege of conducting business in the forum state, Ticketmaster, supra, 26 F.3d at 206 (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)); and (2) that the cause "'arises out of, or relates to' defendant[s'] contacts with the forum state," id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). Once plaintiff succeeds in making such showings, the defendants may still win the jurisdictional battle if they establish that defending a suit in the forum state would be a fate "inconsistent with 'fair play and substantial justice.'" Id. (quoting International Shoe, supra, 326 U.S. at 320).

7

Purposeful Availment

The exercise of jurisdiction over a nonresident defendant is permissible if the defendant has "purposefully directed his activities at residents of the forum." See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quotation omitted). The mere fact that it may have been foreseeable to the defendant that his conduct would cause injury in another state will not suffice, without more, to support jurisdiction. Id. at 474 (citing World-Wide Volkswagen, supra, 444 U.S. at 295). "[R]andom, isolated, or fortuitous" acts will not do, see Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984), nor can jurisdiction be premised solely on the "'unilateral activity of another party or a third person,'" Burger King, supra, 471 U.S. at 475 (citing Helicopteros, supra, 466 U.S. at 417).

Instead, the Due Process Clause requires that a defendant's contacts with the forum state be such that "'he should reasonably anticipate being haled into court there.'" Id. (quoting World-Wide Volkswagen, supra, 444 U.S. at 297). There should be "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Asahi Metal Indus. v. Superior Ct. of Cal., 480 U.S. 102, 109 (1987) (quoting Burger King, supra, 471 U.S. at 475). Defendant's contacts must

8

"'proximately result from actions by the defendant <u>himself</u> that create a "substantial connection" with the forum State.'" <u>Id.</u> (quoting <u>McGee v. International Life Ins. Co.</u>, 355 U.S. 220, 223 (1957)).

Robinson asserts that the court has no jurisdiction over him with respect to the claims against him personally. In support thereof, Robinson asserts that any activities he may have performed in New Hampshire were solely in his capacity as receiver for S.M.A., and not on his own behalf. According to Robinson, it would be "unfair" for the court to exercise jurisdiction over him in his personal capacity because he never willingly put his personal resources at risk nor acted in his own personal interest.

Although not gracefully stated, Robinson's argument appears to be that he, personally, has not "purposefully availed" himself of the privilege of doing business in New Hampshire, as required by the Due Process Clause, because his activities stemmed from his position as receiver. Plaintiff hotly contests this argument, citing <u>Estabrook v. Wetmore</u>, 129 N.H. 520, 529 A.2d 956 (1987), in which the court found that a nonresident corporate officer was subject to in personam jurisdiction in New Hampshire because his "own acts for the corporation are the alleged cause of the injury here." <u>Id.</u> at 526, 529 A.2d at 959. Defendant

9

responds that a receiver is in a substantially different position than a corporate officer such that Estabrook's reasoning is not applicable. Finding this argument to have some merit, the court finds it necessary to make a small foray into the underpinnings of a claim against a receiver.

It is generally recognized that "actions against a receiver are not personal in nature, but are against the receivership or the related funds." Capitol Indem. Corp. v. Curiale, 871 F. Supp. 205, 209 (S.D.N.Y. 1994) (citing McNulta v. Lochridge, 141 U.S. 327, 332 (1891)). However, a receiver may be held personally liable where his actions were outside the scope of his authority as a receiver. See id. at 209; cf. Federal Home Loan Mortgage Corp. v. Tsinos, 854 F. Supp. 113, 116 (E.D.N.Y. 1994) ("Only in the rare instance where a receiver has acted outside the scope of his or her authority may the receiver be sued in his or her individual capacity.").

The First Circuit in Kermit Constr. Corp. v. Banco Credit Y Ahorro Ponceno, 547 F.2d 1 (1st Cir. 1976), has recognized that receivers, being court officers, "share the immunity awarded to judges." Id. at 2; cf. Hazzard v. Westview Golf Club, Inc., 217 A.2d 217, 223 (Me. 1966) ("A receiver appointed by a court of equity is an officer thereof . . . .") (quotation omitted). "At the least, a receiver who faithfully and carefully carries out

10

the orders of his appointing judge must share the judge's absolute immunity. To deny him this immunity would seriously encroach on the judicial immunity already recognized by the Supreme Court." Kermit Constr. Corp., supra, 547 F.2d at 3. Moreover, although the immunity is limited to those actions carefully and faithfully ordered by the court, see id. at 3,

> absolute immunity would fail to attach only when such persons perform acts which are clearly outside the scope of their jurisdiction. . . . [A]llegations of malice, or bad faith or, as here, a claim of conspiracy will not defeat the protection of derivative absolute immunity for actions taken pursuant to court orders.

Cok v. Cosentino, 876 F.2d 1, 3 (1st Cir. 1989) (citations omitted).

When taken as true, plaintiff's allegations do not suggest that Robinson acted beyond the scope of his authority as receiver such that he could be subject to personal liability. As was the case in Cok, there are "no allegations of theft or personal profiteering, or that any of [his] acts were taken without the sanction of the . . . court." Id. at 4. However, although a receiver may differ from another corporate employee for purposes of individual liability, for purposes of personal jurisdiction, a receiver is roughly analogous to any other employee of a corporation. As plaintiff points out, under the order of the York County Superior Court, Robinson functioned as the equivalent

11

of a corporate officer, and as such he is susceptible to jurisdiction to the extent that such officer would be. "Jurisdiction over a corporate officer may not be based merely on jurisdiction over the corporation but must rest on a 'showing of direct personal involvement by the corporate officer in some decision or action which is causally related to plaintiff's injury.'" Villa Marina Yacht Sales v. Hatteras Yachts, 915 F.2d 7, 10 (1st Cir. 1990) (quoting Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 906, 907 (1st Cir. 1980)).

Defendants do not assert that Robinson was not personally involved in a decision or action causally related to plaintiff's injuries. Nor do they claim that jurisdiction over the corporation or over Robinson as receiver is lacking. Instead, their only contention is that because Robinson acted within the scope of his authority, he is not personally liable and therefore personal jurisdiction is also lacking.

In Villa Marina Yacht Sales, the court rejected the notion that proof of the tortious nature of a particular conduct is necessary to establish personal jurisdiction over a defendant. "Requiring proof of the tortious nature of acts in order to assert jurisdiction would make the jurisdictional determination identical to the merits." Id. at 11 (discussing Puerto Rico's long-arm statute). Thus, in that case, the court focused

12

defendant's contacts with the forum state, and did not investigate whether such conduct was tortious. Similarly, as stripped to its essentials--Robinson arguing that his conduct was not "tortious" in the sense that it would not subject him to personal liability in this state--his position carries no weight for jurisdictional purposes. Accordingly, the court finds and herewith rules that his motion is denied.[1]

2. Venue

S.M.A. and Robinson as receiver have moved to dismiss for improper venue (document 8) or, in the alternative, to transfer the case to the United States District Court for the District of Maine (document 7), claiming that no section of the venue statute, 29 U.S.C. § 1391 applies here. Plaintiff attempts to establish venue pursuant to the following section:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in

---

[1] It is curious that Robinson has styled his motion as one for lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed. R. Civ. P., instead of one for failure to properly state a claim for which relief can be granted pursuant to Rule 12(b)(6), Fed. R. Civ. P. Given that "courts should ordinarily satisfy jurisdictional concerns before addressing the merits of a civil action," Feinstein v. Resolution Trust Corp., 942 F.2d 34, 40 (1st Cir. 1991), the court has elected to keep the defendant at his word and treat his motion as one for lack of personal jurisdiction.

13

> . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . .

28 U.S.C. § 1391(a)(2).

Plaintiff argues that a substantial portion of the events and property giving rise to this litigation were located in New Hampshire. First, he notes that the injury took place in New Hampshire, including his loss of over $730,000 and increased tax liability. Second, he observes that many of the events occurred in New Hampshire, including the receiver's transfer and removal of funds to and from New Hampshire. More specifically, plaintiff observes that the receiver moved over one-half million dollars from New Hampshire to Maine on February 15, 1995. See Affidavit of Jonathan C. Robinson ¶ 5.3; Letter dated March 8, 1995, from Edward Haffer to Gregory Uliasz (attached as Exhibit F to Plaintiff's Objection). The court agrees with plaintiff that this evidence supplies the necessary predicate to support venue, as set forth in 42 U.S.C. § 1392. The court therefore finds and herewith rules that defendants' motion to dismiss for improper venue is denied.

The court is also unpersuaded by S.M.A.'s and the receiver's motion to change venue pursuant to 28 U.S.C. § 1404(a), which provides, "For the convenience of parties and witnesses, in the

14

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).

As has recently been recognized in this district, "[d]istrict courts enjoy considerable discretion in deciding whether to transfer a case pursuant to section 1404(a)."  Perkins v. American Honda Motor Co., No. 95-616-M, slip op. (D.N.H. July 2, 1996) (citing Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955); Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987); Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737 (1st Cir.), cert. denied, 434 U.S. 860 (1977)).

The decision to transfer a case should include consideration of the convenience of the parties and witnesses, the relative availability of documents and other evidence, and the possibility of consolidation.  See Cianbro Corp., supra, 814 F.2d at 11; Buckley v. McGraw-Hill, Inc., 762 F. Supp. 430, 439 (D.N.H. 1991).  The party seeking the transfer bears the burden of showing that the relevant factors favor transfer.  Id. at 439; accord Crosfield Hastech, Inc. v. Harris Corp., 672 F. Supp. 580, 589 (D.N.H. 1987); see also 1A JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 0.345[5] (2d ed. 1993).  "Transfer is inappropriate if the effect is merely to shift inconvenience from one party to the other."  Buckley, supra, 762 F. Supp. at 439 (citing 15 WRIGHT,

15

MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION (SECOND) §
3848 (and cases therein cited)).

As for the parties' relative convenience, defendants have
not shown that they would be more inconvenienced by litigating in
Concord, New Hampshire, than plaintiff would be should the case
be transferred to Maine.  That said, it must also be noted that
the inconvenience to either party does not appear substantial in
either event.  Certainly, it would be slightly more convenient
for plaintiff, a resident of Exeter, New Hampshire, to travel to
Concord, New Hampshire, than to Portland, Maine.  But it is also
likely that it would be slightly more convenient for defendant
Robinson, a resident of Maine, and defendant S.M.A., a Maine
corporation, to litigate in Maine.  Where, as here, the relative
convenience of the parties is in equipoise, defendants have
failed to satisfy their burden of showing that the "convenience"
element weighs in their favor.

The court ordinarily would next turn to two other relevant
factors:  the convenience of the witnesses, often treated as the
most important consideration, and the relative ease of access to
documents and other evidence in each jurisdiction.  However, as
neither party has argued these points, the court will not tarry
here, either.

The last consideration is the likelihood of consolidation

with another pending suit if the case is transferred. Defendants maintain that if the case is transferred to Maine, they would request that the transferee court abstain pending resolution of a similar case currently pending in York County Superior Court.[2] This argument fails for two crucial reasons. First, defendants have not stated why they would have to transfer the case before requesting that the court abstain. The court knows of no reason why, assuming all the relevant prerequisites for abstention were met, it could not abstain in anticipation of a decision from a state court sitting in another state.

Second, even if the court were to credit the notion that the possibility of abstention can warrant transfer in certain circumstances, this case does not present such circumstance. In general, a federal court can abstain from deciding a case in deference to a parallel state proceeding only in certain, narrowly prescribed situations. See, e.g., Elmendorf Grafica, Inc. v. D.S. America (East), Inc., 48 F.3d 46, 50 (1st Cir. 1995). As defendants' sole basis for the potential abstention is

---

[2]For reasons that will become apparent, the procedural posture of said case is immaterial. Thus, the court will assume that the case is currently pending, even though plaintiff has asserted that it has reached final adjudication. (In support of said assertion, plaintiff has invited the court to comb the docket in search of a purported statement of defendant to that effect. The court respectfully denies such request.)

17

"reasons of comity", S.M.A.'s and Receiver's Motion for Change of Venue ¶ 5, and they have not even attempted to set forth a recognized argument for abstention, they plainly have not satisfied their burden.  Accordingly, for both of the enumerated reasons, the court finds and herewith rules that defendants' motion for change of venue is denied.

3.  Plaintiff's Motion to Disqualify Counsel for Defendant S.M.A. (document 25)

In support of his motion to disqualify S.M.A.'s counsel, plaintiff argues that the order of the Maine court creating the receivership pendente lite did not give Robinson express authority to hire an attorney to represent S.M.A.  According to plaintiff, S.M.A. has been divested of its "fundamental right--to choose its own counsel."  Furthermore, plaintiff contends that (1) the Maine court order would have required Robinson to return to the court for such authority, and (2) the instant action does not relate to S.M.A.'s dissolution and therefore the hiring of an attorney is not a "necessary part of Robinson's duties to oversee S.M.A. pendente lite."

A receiver's authority is dictated by the court that appointed him or her.  See Fauci v. Mulready, 150 N.E.2d 286, 290 (Mass. 1958).  Review of the appointing court's order leads this

18

court to the conclusion that Robinson likely had the authority to hire counsel for S.M.A.  The York County Superior Court order provides that the receiver pendente lite will be appointed to manage the "business and affairs" of S.M.A., and the receiver will have the following "obligations and authority":

> (1) to oversee and manage the day-to-day operations of the corporation;
> (2) to take possession of funds and assets of the corporation;
> (3) to account for all income, receipts and expenses of the corporation;
> (4) to make decisions concerning the hiring and termination of employees of the corporation, other than Craig Linscott, and to set their compensation;
> (5) to consult with, receipt input from and report to Craig Linscott and James Foy with respect to the foregoing and other matters within the authority of the receiver;
> (6) to take all other actions necessary and appropriate to carry out any of the foregoing responsibilities; and
> (7) to report to and receive further direction from the Court, as requested by the receiver, the Court or the parties.

Linscott v. Foy, No. CV-90-67, slip op. (Sup. Ct. of York County, Maine, June 15, 1992 (Brennan, J.).

Robinson's authority to hire counsel for S.M.A. could arise either from his duty "to oversee and manage the day-to-day operations of the corporation," or from his responsibility to "make decisions concerning the hiring and termination of employees of the corporation."  See id.  Moreover, contrary to

19

plaintiff's contentions, the court order neither expressly nor implicitly states that Robinson would have to return to the court in order to receive authorization to hire counsel to represent S.M.A. Although Robinson would have demonstrated more prudence had he first petitioned the York County Superior Court for leave to hire counsel to represent S.M.A., he does not appear to have contravened the court's order or to have acted wholly outside the scope of his authority.

Nonetheless, a further point deserves brief attention. The superior court order provides that upon request of the court, the parties, or the receiver, that court would provide further direction for the receiver. See id. Thus it appears that Foy, being a named party to that action, has the ability to request a hearing with the court if he contests Robinson's authority to hire counsel for S.M.A. Should Foy decide to make such a request with the superior court, this court will entertain an appropriately supported motion to stay this action pending resolution of the issue by the state court.

Finally, plaintiff's claim of conflict of interest is also unpersuasive. Plaintiff asserts that because Robinson's counsel, the Sheehan firm, represented other parties adverse to S.M.A.'s sole owner, Foy, in a case pending in a court sitting in

20

Rockingham County, New Hampshire, said firm's representation of S.M.A. here would be a conflict of interest. The court can find no "conflict" in a law firm's decision to represent different parties, all of whom are adverse to plaintiff's interest. For all of these reasons, plaintiff's motion to disqualify must be and herewith is denied.

<u>Conclusion</u>

For the reasons set forth herein, the court denies the following motions: (1) defendant Robinson's motion to dismiss for lack of personal jurisdiction (document 4) insofar as the complaint contains claims against him <u>personally</u>; (2) S.M.A.'s and Receiver's motion for change of venue (document 7), (3) S.M.A.'s and Receiver's motion to dismiss for improper venue (document 8), and (4) plaintiff's motion to disqualify counsel for defendant S.M.A. (document 25).

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

September 30, 1996

cc:  Gregory T. Uliasz, Esq.
     Edward A. Haffer, Esq.
     James E. Townsend, Esq.
     Sidney Thaxter, Esq.

21