# DECISIONS

## OF THE

## SUPREME JUDICIAL COURT

### OF

## MASSACHUSETTS

---

COMMONWEALTH *vs.* MIGDALIA OCASIO.

Franklin. February 6, 2001. - April 19, 2001.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Warrant. *Practice, Criminal,* Motion to suppress. *Evidence,* Best and secondary.

This court concluded that, in circumstances in which a search warrant was lost and could not be returned pursuant to G. L. c. 276, § 3A, the Commonwealth was entitled to attempt to establish, pursuant to the best evidence rule, the contents of the lost warrant through secondary evidence. [4-8]

A criminal case was remanded for a determination whether a search warrant that had existed had been lost other than through the serious fault of the Commonwealth and whether a reasonable search had been made for it. [7]

INDICTMENT found and returned in the Superior Court Department on September 18, 1998.

A pretrial motion to suppress evidence was heard by *Tina S. Page*, J.

An application for an interlocutory appeal was allowed by *Lynch*, J., in the Supreme Judicial Court for the county of Suffolk and the appeal was reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the matter from the Appeals Court.

*Judith Ellen Pietras*, Assistant District Attorney, for the Commonwealth.

*Jeffrey S. Brown* for the defendant.

SPINA, J. A judge in the Superior Court suppressed evidence obtained pursuant to a search warrant that had been lost. A single justice of this court granted the Commonwealth leave to take an interlocutory appeal to the Appeals Court. We transferred the case to this court on our own motion. On appeal, the Commonwealth argues that it should be allowed to establish the contents of the warrant through secondary evidence, and therefore its failure to return the original warrant does not require suppression. We agree, and vacate the order of suppression.

I. *Facts*. During the summer of 1998, the Hampshire-Franklin Narcotics task unit conducted an investigation of drug sales in the area of Turners Falls, Greenfield, and Millers Falls. The target of the investigation was Jose Santiago. On August 20, 1998, David B. Foley, a Massachusetts State police trooper with thirteen years' experience, prepared seven applications for search warrants including a warrant to search apartment no. 5, 38 East Main Street, Millers Falls (the apartment), an apartment shared by Santiago and the defendant, Migdalia Ocasio.

In preparing the application to search this apartment, Trooper Foley typed a two-page list of items to be seized, and attached copies of it as Exhibit A to both the application and the warrant. Additionally, Trooper Foley typed a description of the premises to be searched and affixed copies to the appropriate sections of both the application and warrant. He made oath to the application and the affidavit before a judge in the Superior Court, and the warrant was issued. The original application, including Exhibit A and the affidavit, was filed with the clerk-magistrate

of the Greenfield District Court. The application and the affidavit bear the signature of the issuing judge.

The next day, August 21, Trooper Foley attended a raid plan meeting. Each of the seven warrants was placed in a separate raid kit box that would be used to transport the items seized pursuant to the corresponding warrant. Sergeant Michael Habel, the officer in charge of the search of the apartment, took the search warrant from the evidence box, and met with Trooper Foley to discuss the items listed in Exhibit A. The list included specifically identified electronic items that had been traded for crack cocaine. Trooper Foley met with Sergeant Habel to assure that each officer knew the items to be seized. They then went to the apartment to conduct a search.

The police encountered both the defendant and Santiago at the apartment. Sergeant Habel placed the search warrant and Exhibit A on Santiago's lap. At the suppression hearing, Sergeant Habel testified that he saw Santiago looking at the warrant. There was no evidence presented that Santiago was unable to read the warrant. Throughout the search, Sergeant Habel and the other officers referred to the warrant and Exhibit A. Sergeant Habel testified that after executing the warrant, he believed that he placed the warrant back in the evidence box. After the search, however, the evidence officer was unable to locate the search warrant. Faced with the requirement of making a return pursuant to G. L. c. 276, § 3A, but lacking the warrant, the officer photocopied the back of a blank search warrant, attached it to the inventory return, and filed them with the clerk-magistrate. There is no suggestion that the officer did not act in good faith. The original warrant was never located, and consequently never returned to the Greenfield District Court.

Defense counsel moved to suppress the evidence on the ground that failure to return the original warrant and therefore failure to produce it at the suppression hearing was tantamount to a warrantless search and seizure.[1] After an evidentiary hearing, the motion judge determined that, although a valid search warrant had been issued, "the loss of the search warrant

---

[1]Defense counsel filed an affidavit in support of the motion to suppress claiming that he was without knowledge, at that time, to determine whether a valid warrant ever existed.

deprives the defendant of her right to challenge the warrant on its face. Therefore, the evidence seized must be suppressed."

II. *Discussion.* In reviewing a motion to suppress evidence, we adopt the motion judge's subsidiary findings of facts absent clear error. See *Commonwealth* v. *Yesilciman,* 406 Mass. 736, 743 (1990), and cases cited. However, "[o]ur appellate function requires that we make our own independent determination on the correctness of the judge's 'application of constitutional principles to the facts as found . . . .' " *Commonwealth* v. *Haas,* 373 Mass. 545, 550 (1977), *S.C.,* 398 Mass. 806 (1986), quoting *Brewer* v. *Williams,* 430 U.S. 387, 403 (1977).

A. *Failure to return the original warrant.* The Commonwealth argues on appeal that making the required return without the original warrant was a mere ministerial defect of G. L. c. 276, § 3A, without constitutional implications. We have stated on previous occasions that "[m]inisterial errors do not nullify search warrants." *Commonwealth* v. *Pellegrini,* 405 Mass. 86, 88, cert. denied, 493 U.S. 975 (1989), and cases cited. This is particularly true in the context of the warrant return procedures required by G. L. c. 276, § 3A.[2] See *Commonwealth* v. *Cromer,* 365 Mass. 519, 521 n.3 (1974). See also *Commonwealth* v. *Freiberg,* 405 Mass. 282, 300, cert. denied, 493 U.S. 940 (1989) (error in return of warrant does not constitute ground for voiding otherwise lawful search); *Commonwealth* v. *Aldrich,* 23 Mass. App. Ct. 157, 162-163 (1986), quoting *Commonwealth* v. *Lyons,* 397 Mass. 644, 648 (1986) ("Any requirement in § 3A of an accurate return 'is not closely affiliated with any constitutional guarantee' . . . and can have no practical effect upon a warrant issued on an affidavit clearly establishing probable cause"). Typically, however, such errors involve either clerical or typographical mistakes, see, e.g., *Commonwealth* v. *Freiberg, supra* (error in notation of time search was conducted), and suppression would be inappropriate because the error can

---

[2]General Laws c. 276, § 3A, provides in pertinent part: "Every officer to whom a warrant to search is issued shall return the same to the court by which it was issued . . . with a return of his doings thereon . . . ."

"always be corrected at a later time in the proceedings." *People* v. *Schmidt*, 172 Colo. 285, 293 (1970).[3]

The same cannot be said when an officer fails to include the original warrant with his return. The purpose of the return and inventory requirements of G. L. c. 276, § 3A, is twofold: First, it provides defense counsel with access to the warrant and all corresponding documents supporting the issuance of the warrant, see, e.g., *Fitez* v. *State*, 9 Md. App. 137, 142 (1970); and second, it protects the searched party from having his seized property stolen or misplaced by the police. See *State* v. *Cortman*, 251 Or. 566, 571 (1968), cert. denied, 394 U.S. 951 (1969). When the original warrant is neither returned nor available for inspection by defense counsel, the defendant's ability to raise subsequent challenges to the issuance of the warrant and the manner in which it was executed may be compromised to a constitutionally unacceptable degree. If all the terms of the warrant can be reliably established through secondary means, however, then the defendant will not be deprived of any opportunity to mount a challenge against the warrant.

B. *Applicability of the best evidence rule.* At the suppression hearing, the Commonwealth, over defense counsel's best evidence objection, offered the affidavit, original application, and Exhibit A as secondary evidence to prove the contents of the lost warrant. The motion judge, although finding that the warrant did in fact exist, appears to have held the Commonwealth strictly accountable for its nonproduction,[4] disregarded the secondary evidence establishing the contents of the

---

[3]Conversely, the failure to make any return has led some courts to conclude that suppression is the appropriate remedy. See *State* v. *Montoya*, 86 N.M. 119, 122-123 (Ct. App. 1974); *People* v. *Washington*, 75 Misc. 2d 1005 (N.Y. Dist. Ct. 1973). One commentator has even suggested that the requirement of a return "inheres in the Fourth Amendment [to the United States Constitution]" because the lack of any return was "one of the oppressive features of the general warrants which were intended to be prohibited by adoption of the [Fourth] Amendment." W.R. LaFave, Search and Seizure § 4.12(c) (3d ed. 1996), citing T. Taylor, Two Studies in Constitutional Interpretation 41 (1969). Here, however, it is undisputed that some return was made by attaching the inventory return to the back of a blank search warrant.

[4]In her findings and rulings the motion judge relied on the lost evidence doctrine. This doctrine provides that "[i]n a criminal case when potentially exculpatory real evidence is discarded, lost, or destroyed . . . a defendant may seek to have the charges dismissed, or to preclude the prosecution from

warrant, and suppressed the evidence. This was error. If a defendant contemplates the possibility of a challenge to a lost warrant on its face, a hearing should first be held to determine whether the terms of the warrant can be established under the best evidence rule. If the contents cannot be established and the defendant articulates a palpable claim to challenge the warrant on its face or is otherwise prevented from challenging the lost warrant, then suppression might be required. Here, however, because there was evidence that the warrant once existed, the Commonwealth was entitled to try to establish, pursuant to the best evidence rule, the contents of the lost warrant through secondary evidence.

The best evidence rule provides that, where the contents of a document are to be proved, the party must either produce the original or show a sufficient excuse for its nonproduction. See P.J. Liacos, Massachusetts Evidence 746 (7th ed. 1999). See also 2 McCormick, Evidence § 230 (5th ed. 1999). The rule is a doctrine of evidentiary preference "principally aimed, not at securing a writing at all hazards and in every instance, but at securing the best *obtainable* evidence of its contents." *Id.* at § 237. See *Fauci* v. *Mulready*, 337 Mass. 532, 540 (1958), quoting comment on Rule 602 of the ALI Model Code of Evidence ("The 'best evidence' rule, here involved, 'at common law is a preferential, rather than an exclusionary rule' "). Thus, where the original has been lost, destroyed, or otherwise made unavailable, its production may be excused and other evidence of its contents will be admissible, provided that certain findings are made.

As a threshold matter, the proponent must offer evidence sufficient to warrant a finding that the original once existed. See

relying on the evidence in question." P.J. Liacos, Massachusetts Evidence § 11.7.1, at 715 (7th ed. 1999). Although the analysis under the lost evidence doctrine is somewhat similar to the best evidence rule, the lost evidence doctrine usually is applied to the loss of exculpatory evidence that might have assisted the defense at trial, and it imposes on a defendant the burden of showing that access to the lost material would have produced evidence favorable to his case. See *Commonwealth* v. *DiBenedetto*, 427 Mass. 414, 419 (1998). There is no claim that the contents of the warrant constitute exculpatory evidence, and this defendant has no burden to establish that the warrant contained evidence favorable to her before being allowed to challenge it. The lost evidence doctrine is not applicable.

*Fauci* v. *Mulready, supra* at 540-543. If the evidence warrants such a finding, the judge must assume its existence, and then determine if the "original had become unavailable, otherwise than through the serious fault of the proponent . . . and that reasonable search had been made for it." *Id.* at 540. See Proposed Mass. R. Evid. 1004 ("The original is not required, and other evidence of the contents of a writing . . . is admissible if . . . [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith"). If the judge makes these findings in favor of the proponent, the judge must allow secondary evidence to establish the contents of the lost writing. *Fauci* v. *Mulready, supra* at 542.

Here, there was evidence sufficient to establish that the warrant once existed, and the judge found that there had been a warrant. At the suppression hearing, Trooper Foley testified that he applied for the warrant and that the judge had issued it in his presence. Additionally, all the other troopers involved in the execution and return of the warrant testified at the hearing. Finally, the Commonwealth offered all the documents supporting issuance of the warrant, including the original application bearing both Trooper Foley's and the issuing judge's signature, a copy of Exhibit A, and Trooper Foley's affidavit in support of the application for the search warrant.

Having found that the search warrant once existed, the judge should have determined (1) whether the original became unavailable otherwise than through the serious fault of the Commonwealth; and (2) whether a reasonable search had been made for it. See *Fauci* v. *Mulready, supra* at 542. The evidence could have supported such findings, but they involve determinations that can only be made by the motion judge, as fact finder. See *id.* at 540, citing *Smith* v. *Brown,* 151 Mass. 338, 339-340 (1890). Because the motion judge did not make findings on this issue, the matter must be remanded to the Superior Court for further findings. If the judge permits the Commonwealth to establish the contents of the lost warrant, the defendant must be given the opportunity to amend her motion to suppress in order to address any issues arising from the restored warrant. Such issues should be aired at a separate proceeding. See *People* v. *Wells,* 182 Ill. 2d 471, 488-489 (1998) (separate proceeding needed after contents of lost warrant established).

Allowing the Commonwealth to establish the contents of the lost warrant through application of the best evidence rule is consistent both with our decisions and those of other States. We are particularly guided by *Commonwealth* v. *Harris*, 371 Mass. 462 (1976). In that case, we reversed convictions of murder in the first degree and armed assault and ordered a retrial. Anticipating a motion to suppress because the original warrant and supporting affidavit had been lost since the original trial, we concluded that the Commonwealth must be charged with the unexplained loss of these documents, and must bear the burden of establishing the contents of the lost documents with "sufficiently reliable information." *Id.* at 475.

Other States have permitted secondary evidence to establish both the existence and material terms of lost or misplaced warrants. See, e.g., *Thomas* v. *State*, 37 Ala. App. 118, 120 (1953) (secondary evidence becomes primary evidence by proof of destruction or loss of original primary document); *State* v. *Hall*, 342 So. 2d 616, 622 (La. 1977) (parol evidence used to prove existence of misplaced warrant); *Anderson* v. *State*, 9 Md. App. 532, 538-539 (1970) (where original document not intentionally lost or destroyed, prosecution entitled to offer secondary evidence); *Boyd* v. *State*, 164 Miss. 610, 613 (1933) ("If the affidavit and search warrant have been lost, the proof must show not only the loss but also substantially their contents").

We vacate the order of suppression and remand the case for further proceedings consistent with this opinion.

*So ordered.*